# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                       No. CR 13-0436 RB

TREVOR THAYER,

      Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
## ORDER DENYING MOTIONS TO SUPPRESS

On August, 8 2013, Defendant Trevor Thayer filed a Motion to Suppress to exclude all evidence seized from an August 21, 2012 search of his home.  (Doc. 60).  The search was conducted pursuant to a warrant.  On September 12, 2013, the Court held an evidentiary hearing on Defendant's motion in Las Cruces, New Mexico.  After the evidentiary hearing, on September 18, 2013, Defendants filed an additional motion entitled "Defendant Trevor Thayer's Motion to Reconsider or in the Alternative, Supplemental Motion in Support of His Motion to Suppress [Doc. 60]."  (Doc 83).  As the Court had not yet issued a decision on the August 8, 2013 motion to suppress at the time the September 18, 2013 motion was filed, and because this additional motion relates back to the August 8, 2013 Motion to Suppress, the Court considers both of these motions as one.  Having carefully considered the submissions of counsel, relevant caselaw, evidence adduced at the hearing, and being otherwise fully advised, the Court **DENIES** Defendant's motion based upon the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Federal Rule of Criminal Procedure 12(d) provides that when factual issues are involved in deciding a motion, the Court must state its essential findings on the record.  *See* Fed. R. Crim. P. 12(d).  The Court makes the following factual findings based on the evidence adduced at the evidentiary hearing, including the testimony from DEA Special Special Agent Ryan Mirabal, Sean Byrd, Aaron Chavez, and Corina Silva.

**PROBABLE CAUSE**

1. Ryan Mirabal is a special Special Agent at the Drug Enforcement Administration (DEA). He has been employed by the DEA for approximately four years. (*See* Transcript of Hearing at 2:7-16 (taken Sept. 12, 2013)).[1]

2. On or about August 6, 2012, Special Agent Mirabal received a postal envelope addressed to the DEA.   The postal envelope was sent via U.S. Postal Service Express Mail, which was marked extremely urgent.  A handwritten letter and a set of photographs were inside the envelope.  (*See* Exhibit C - J; *See* Transcript of Hearing at 2:22-3:18).

3. The unsigned, anonymous letter stated that Mr. Trevor Lee Thayer was growing marijuana at his home at 1003 Santa Rita Street in Silver City, NM without a current state license to grow marijuana.  The letter indicated that Mr. Thayer had an expired marijuana growing license and sells the marijuana he grows.  (*See* Exhibit I).

4. The letter provided significant detail about the location and setup of the marijuana plants. According to the letter, Mr. Thayer had 35 plants in the backyard as of August 3, 2012. These plants were located in a greenhouse, shed, and surrounding areas.[2]  (*See* Exhibit I).

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.
[2] The letter does not make clear the exact number of marijuana plants growing on the property.  Specifically, it is not clear whether there were 35 total plants on the property, or whether there were 35 plants located outside of the greenhouse and shed.

5. The photographs showed marijuana plants in various locations. In the pictures, a greenhouse type structure is visible. (*See* Exhibits D – H; Transcript of Hearing at 8:14-15).

6. The letter provided details about Mr. Thayer, including his address, phone number, and date of birth. It also stated that Mr. Thayer owned a Harley-Davidson motorcycle and a silver Frontier truck. (*See* Exhibit I).

7. The letter stated that Mr. Thayer's operation posed a threat to the children at a nearby daycare center. (*See* Exhibit I).

8. Special Agent Mirabal determined Corina Silva was the SOI. Ms. Silva and Mr. Thayer have a child together and she was a frequent visitor to his house. (*See* Transcript of Hearing at 8:1-9).

9. The relationship between Ms. Silva and Mr. Thayer began in the early 2000s and ended in September of 2012.[3] (*See* Transcript of Hearing at 73:13-17).

10. Ms. Silva did not personally send the letter and pictures to the DEA. Mr. Ken Cooper, a friend of Ms. Silva, likely sent the packet to the DEA. Special Agent Mirabal learned of Ms. Silva's identity through Mr. Cooper. (*See* Transcript of Hearing at 14:19-15:12).

11. Special Agent Mirabal called Ms. Silva and discussed the contents of the packet with her. He discussed with her the information in the letter. Special Agent Mirabal asked Ms. Silva for additional photographs of Mr. Thayer's property, which she sent him from her cell phone soon thereafter. (*See* Transcript of Hearing at 21:1-25).

---

[3] Ms. Silva gave inconsistent responses as to the duration of her relationship with the Defendant. However, she stated they broke up on September 11, 2012. *See* Transcript of Hearing at 73:13-17.

12. Ms. Silva wrote all but the last paragraph of the letter.  The author of the last paragraph remains unclear.  This paragraph revealed the presence of a basement, which may contain further evidence.  (*See* Transcript of Hearing at 71:3-23).

13. After receiving the envelope, Special Agent Mirabal began an investigation into the claims made in the letter.  Special Agent Mirabal confirmed Mr. Thayer resided at the address given.  On August 7, 2012 Special Agent Mirabal contacted Mr. William Catanach at the New Mexico Department of Health Medical Tempest Program.  Mr. Catanach stated that Mr. Thayer's license to grow marijuana had expired on April 26, 2013, approximately four months prior to the DEA receiving Ms. Silva's packet, and told Special Agent Mirabal that Mr. Thayer had not begun the renewal process at the time the warrant was executed.[4]  (*See* Transcript of Hearing at 5:3-6:3).

14. Special Agent Mirabal then asked State Police to verify visually Mr. Thayer's address and take pictures of the residence.  New Mexico State Police Officer Mike Dunn was able identify a structure similar to the greenhouse described in the letter and confirmed the presence of a daycare near the house, but was not able to see marijuana from his vantage point.  (*See* Transcript of Hearing at 6:15-7:5; 39:9-13).

15. Special Agent Mirabal contacted the Source of Information (SOI).  He asked her for additional photographs of the marijuana plants to confirm the information she had sent him in the mail.  She gave him more information about the marijuana on Mr. Thayer's

---

[4] The Court makes no finding as to whether Mr. Catanach's statement was accurate, only that the statement was made.  In fact, Mr. Thayer may have had a renewal application pending with the State of New Mexico.  Defendant supplied a copy of Mr. Thayer's correspondence with the State of New Mexico Medical Cannabis Program regarding his medical card and his personal production license.  (*See* Doc 60-3).  This document was not offered into evidence at the hearing, and no testimony was presented to rebut Special Agent Mirabal's testimony on this subject.  (*See* Transcript of Hearing at 36:3-21).  The correspondence indicates the State of New Mexico received Mr. Thayer's renewal application on July 20, 2012 and that Mr. Thayer's one year license to produce medical cannabis was approved on August 30, 2012.  (*Id.*)  However, there was about a four month gap between the time Mr. Thayer's previous license expired and the new license was renewed.  The search of Mr. Thayer's premises took place during this gap.

property and sent additional photographs from her cell phone that further confirmed the contents of the August 6, 2012 envelope.  (*See* Transcript of Hearing at 7:11-21).

**THE SEARCH WARRANT**

16. The Honorable William P. Lynch issued a search warrant for Mr. Thayer's residence at 1003 Santa Rita Street, Silver City, NM on August 27, 2012.  Special Agent Mirabal wrote the affidavit in support of the warrant.  (*See* Gov't Exhibit 1, Doc. 74-1).

17. In the warrant, the items to be seized included all evidence of violations of 21 U.S.C. §§ 841 and 846. Along with controlled substances and equipment used to grow marijuana, firearms and ammunition are listed as items to be seized.  (*See* Doc. 74-1).

18. The information in Special Agent Mirabal's affidavit was based on his correspondence with a SOI and his subsequent investigation.  The identity of the SOI was not disclosed in the affidavit.  (*See* Doc. 74-1).

19. The affidavit described, in detail, the series of events listed above, but does not attach the SOI's letter or photographs.  It included both a detailed description of the marijuana on the premises and information about a variety of firearms on the premises.  Additionally, the affidavit included a statement from the SOI that "there was a bunch of marijuana on the workshop desk that was put in a bunch of baggies."[5]  (*See* Doc. 74-1).

20. The affidavit disclosed that the SOI sent additional photos from her phone "of THAYERS house and marijuana contained within the household."  (*See* Doc. 74-1).

21. The affidavit stated that "On November of 2010 the SOI was involved with THAYER in a domestic abuse case in Grant County, New Mexico."  (*See* Doc. 74-1).

22. The affidavit states that on August 7, 2012 a New Mexico State Police Officer (Mike Dunn), working as an undercover Special Agent corroborated the information described

---

[5] This statement was given on August 8, 2012, after the initial letter was sent.  (*See* Doc. 74-1) .

by the SOI.  Officer Dunn verified the address, that Mr. Thayer was at the residence, and that there was a white structure in the backyard similar to a small sized green house. (*See* Doc. 74-1).

23. Special Agent Mirabal was present at the execution of the search warrant.  (*See* Transcript of Hearing at 29:17-19).

## LEGAL STANDARDS/CONCLUSIONS OF LAW

Defendant argues the warrant authorizing the search of his residence was defective for two reasons.  First, in Defendant's Motion to Suppress (Doc. 60), Defendant argues the affidavit in support of the warrant failed to set forth the basis by which Special Agents concluded the SOI was credible and reliable.  Second, in Defendant's Supplemental Motion in Support of His Motion to Suppress (Doc. 83), Defendant argues the SOI was acting at the government's behest in taking a second set of photographs, and thus her actions constituted an  unlawful government search.

### I.       The Validity of the Search Warrant

A  search  warrant  must  be  based  upon  probable  cause,  which  a  reviewing  court determines by examining the affidavit supporting the warrant.  *See United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001).  The court determines the "sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).  Probable cause exists "only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).  Provided the magistrate judge's

"neutral and detached function" has been properly fulfilled, a reviewing court should pay great deference to the magistrate judge's determination of probable cause. *Gates*, 462 U.S. at 238. "After-the-fact, de novo scrutiny of a magistrate's probable-cause determination is forbidden." *United States v. Biglow*, 562 F.3d 1272 (10th Cir. 2009) (internal citations omitted).

Where probable cause is based on an informant's tip, the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge. *Gates*, 462 U.S. at 230-31; *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009). "These factors are not absolute, independent requirements that must be satisfied in order for probable cause to exist . . . a deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability." *Id.* (citation omitted). An informant's tip which provides "highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity" is more likely to be found sufficient to support probable cause. *Id.* (quotations omitted).

Examining Special Agent Mirabal's affidavit, the Court concludes that it was sufficient to find probable cause. Several details in the affidavit demonstrate that the SOI had highly specific knowledge of the Defendant. First, the SOI knew the Defendant had an expired license to grow marijuana for personal use. Second, she knew the precise location, number and stage of production of the marijuana plants on the property as of August 3, 2012, and sent photographic evidence of her observations. (*See* 74-1 at 4). And, third, the SOI revealed that Defendant had a variety of guns that he kept in his bedroom.

Moreover, the affidavit provides a key fact to indicate a close relationship between the SOI and the Defendant.  Specifically, the affidavit stated that "On November of 2010 the SOI was involved with Thayer in a domestic abuse case in Grant County, New Mexico."  (Doc 74-1 at 4).  While this part of the transcript may have been redacted upon disclosure to the Defendant, no evidence was provided that it was omitted from the affidavit given to the magistrate judge. (*See* Transcript of Hearing at 26:15-27:5).  Based on this disclosure, the magistrate judge could reasonably conclude the SOI had a strong basis of knowledge and find probable cause for the search.

Beyond the SOI's allegations, the subsequent corroboration of certain key facts tips in favor of a finding of probable cause.  "When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."  *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).  State police confirmed that Mr. Thayer did in fact live at the address given and that the residence neighbored a daycare center. Further, state police confirmed there was a greenhouse type structure in the back.  The presence of the greenhouse confirmed the SOI's detailed description of the backyard and photographs. Lastly, Special Agent Mirabal confirmed that Mr. Thayer had an expired license to grow marijuana.  Unlike the visual confirmation of Thayer's address, this information was not readily publicly available, and indicated Mr. Thayer may be involved in producing marijuana.

And, in this case, absolute corroboration of the allegations was not necessary to support a finding of probable cause.  Unlike many informant cases, the SOI here was not anonymous. Agent Mirabal knew her identity prior to applying for the search warrant, and was in contact with her throughout the process of executing the warrant.  While knowing the identity of the

8

informant is not dispositive, it supports a finding of probable cause, and lessens the need for total

corroboration.  The Tenth Circuit has stated:

> [P]robable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts, and the value of informants' tips in establishing probable cause is as varied as the myriad of fact situations in which they arise. Nevertheless, courts traditionally have distinguished between anonymous tipsters, whose motives and bases of knowledge are unknown to the investigating officers, and ordinary citizens who identify themselves and report crimes to the police. Although the courts have eschewed rigid rules, the probable cause case law emphasizes the importance of corroboration of some amount of the anonymous tipster's information in establishing probable cause, while presuming the reliability of citizen informants.

*J.B. v. Washington County*, 127 F.3d 919, 929-30 (10th Cir. 1997) (internal citations and

quotations omitted).

Defendant relies on *Danhauer* to challenge the magistrate judge's finding of probable

cause.  *See* 229 F.3d 1002.  In *Danhaeur,* the Tenth Circuit found that a magistrate judge's

determination of probable cause was erroneous because the officer's affidavit in support of the

warrant was insufficient.  *Id.* at 1006-7.  *Danhauer* is distinguishable.

In *Danhauer*, a confidential informant provided information to the police that the

defendant, along with his brother, was cooking methamphetamine in a garage on his property.

*Id.* at 1004.  The police confirmed the address given belonged to the defendant and researched

the criminal background of the defendant.  *Id.*  Both the defendant and his brother had

outstanding arrest warrants, and the defendant's brother was in violation of his probation.  *Id.*

These facts were included in an affidavit for a search warrant, which was issued.  *Id.*  The

Defendant filed a motion to suppress, arguing the affidavit in support of the search warrant did

not provide probable cause and the execution of the search warrant did not fall within the good-

faith exception to the Fourth Amendment exclusionary rule.  *Id.*

The Tenth Circuit found that the affidavit failed to allege facts sufficient to establish probable cause. *Id.* at 1006. The court found the affidavit was "replete with repetitive and tenuous facts," which could "not provide a magistrate with a sufficient basis for drawing a reasonable inference that a search would uncover evidence of criminal activity." *Id.* Further, the "affiant neither established the veracity of the informant, nor obtained sufficient independent corroboration of the informant's information." *Id.*

Unlike *Danhauer*, Special Agent Mirabal's affidavit contains significant detail to establish the SOI's basis of knowledge for her assertions. The SOI had particular information, including photographs, of the Defendant's operation. She knew Mr. Thayer had an expired license for medical marijuana use. And, finally, because of the revelation of the domestic dispute, it was reasonable for the magistrate to conclude that the SOI had a personal relationship with Mr. Thayer and had firsthand knowledge of his marijuana operation.

Defendant argues that corroboration is lacking. To meet the standard required by *Danhauer* an officer must do more than verify an address and the criminal history of the defendant. *Id.* There was significant corroboration in this case. First, the state police officer confirmed the presence of a greenhouse type structure on the Defendant's premises similar to the one described in the SOI's letter. Second, Special Agent Mirabal personally confirmed the Defendant had an expired state issued license to grow marijuana, which connects the illicit activity to the Defendant's residence. Moreover, corroboration is only one element of the probable cause determination, and in this case it was clear the SOI had a significant basis of knowledge for her claims.

Looking at the totality of the circumstances presented to the issuing magistrate, the Court concludes probable cause existed for the issuance of the warrant. The detailed allegations

concerning the marijuana plants and the disclosure of the personal relationship between the informant and the Defendant "reduce the chances of a reckless or prevaricating tale, [and] thus provid[ed] a substantial basis for crediting the informant['s] assertions." *United States v. Le*, 173 F.3d 1258, 1267 (10th Cir. 1999) (citing *Gates*, 462 U.S. at 244-45). Taken together, all of the facts and corroborative information contained in the affidavit were sufficient to give the magistrate a "substantial basis" upon which to conclude that there was "a fair probability that contraband or evidence of a crime [would] be found" at the Defendant's residence. See *id.*

## II.     The Good Faith Exception

Even if the warrant were not supported by probable cause, the evidence would be admissible under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 919-22 (1984). Evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith with reasonable reliance on the warrant. *Id.* at 913. The government bears the burden of proving that its Special Agents' reliance on a search warrant was objectively reasonable. *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990). However, there is a presumption that when an officer acts upon a search warrant, the officer is acting in good faith. *United States v. Price*, 265 F.3d 1097, 1101 (10th Cir. 2001). "Just as reviewing courts give 'great deference' to the decisions of judicial officers who make probable-cause determinations, police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant." *United States v. Tuter*, 240 F.3d 1292, 1300 (10th Cir. 2001) (citing *Corral-Corral*, 899 F.2d at 939).

The Supreme Court has identified four situations in which the good-faith exception to the warrant requirement is inapplicable: (1) if the magistrate or judge, in issuing a warrant, was

11

misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) if the issuing judge wholly abandoned his judicial role; (3) if the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) if the warrant was so facially deficient that the executing officer could not reasonably believe it was valid.  *Leon*, 468 U.S. at 922-23; *see also United States v. Tisdale,* 248 F.3d, 964, 972 (2001) (discussing circumstances in which the good faith exception is inapplicable).

Defendant argues the third exception above applies here to preclude the use of the good faith exception. The Court disagrees.  Even if the magistrate judge was erroneous in his determination of probable cause, it was not unreasonable for Special Agent Mirabal and the other government Special Agents who searched Defendant's premises to rely on the warrant.  As described above, the affidavit supporting the warrant contained significant details about the Defendant, his premises, and his marijuana operation.  Further, Special Agent Mirabal knew the identity of the informant and was in close contact with her throughout.  The officers had every reason to rely on the magistrate judge's determination of probable cause.

Even in *Danhauer*, a case on which Defendant heavily relies and where the warrant was determined invalid, the fruits of the search were not suppressed under the good faith exception. *See Danhauer*, 229 F.3d at 1007.  The *Danhauer* court found, "the absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued, particularly when the officer takes step to investigate the informant's allegation."  *Id.*  Here, Special Agent Mirabal, who both obtained and executed the search warrant, took significant steps to investigate the SOI's claim.  He did not solely rely on the original letter or photographs to establish probable

cause.  He learned the SOI's identity and obtained further evidence of Defendant's operation.

Moreover, he performed an independent investigation to corroborate the readily confirmable

details of the SOI's claim.  In short, there was plenty of evidence for Special Agent Mirabal to

reasonably believe the fruits of his investigation into the SOI's initial allegation sufficiently

linked the production of marijuana to Defendant's residence.

### III.    Private Search

Defendant argues in his Supplemental Motion in Support of his Motion to Suppress that

the SOI, Corina Silva, acted at the government's behest, and thus her search of the Defendant's

premises was in violation of the Fourth Amendment.  This argument also fails.  While the

question of whether Special Agent Mirabal's request for further photographic evidence of the

Defendant's marijuana operation would have transformed an unauthorized private intrusion into

state action is a close one, the Court finds there are no facts to show Ms. Silva did, in fact,

conduct an unlawful search on behalf of the government.

The Fourth Amendment only protects against unreasonable searches and seizures when

those searches are the product of government action.  *See United States v. Jacobsen*, 466 U.S.

109, 113 (1984).  "It is wholly inapplicable 'to a search or seizure, even an unreasonable one,

effected by a private individual not acting as an Special Agent of the Government or with the

participation or knowledge of any governmental official.'" *Id.*  (quoting *Walter v. United States*,

447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).  However, "a search by a private citizen

may be transformed into a governmental search implicating the Fourth Amendment if the

government coerces, dominates or directs the actions of a private person conducting the search or

seizure." *United States v. Poe*, 556 F.3d 1113, 1123 (10th Cir. 2009) (citing *United States v.*

*Smythe*, 84 F.3d 1240, 1242 (10th Cir. 1996)).

13

The Tenth Circuit has announced a two-step inquiry to determine whether the government coerces, dominates, or directs the actions of a private person:

> First, we determine whether the government knew of and acquiesced in the [private person's] intrusive conduct. Second, we consider whether the party performing the search intended to assist law enforcement efforts or to further his own ends. Both prongs must be satisfied considering the totality of the circumstances before the seemingly private search may be deemed a government search.

*Id.* (quotations and citations omitted). The first prong, which requires knowledge and acquiescence, encompasses "the requirement that the government Special Agent must also affirmatively encourage, initiate or instigate the private action." *Smythe,* 84 F.3d at 1243.

Defendant argues the government's involvement in obtaining more information from Ms. Silva amounts to de facto government action.  The Court disagrees with this characterization. There is scant evidence to suggest a government Special Agent affirmatively encouraged, initiated or instigated a private, unconsented search of the Defendant's premises.  The facts presented show the following.  Ms. Silva sent Special Agent Mirabal two sets of photographs depicting Defendant's marijuana operation.  When Ms. Silva sent the first set of photographs along with her letter (Exhibits C-J) she was not acting at the government's behest.[6]  Only when Special Agent Mirabal asked Ms. Silva to take additional photographs of Defendant's premises "to verify the initial photographs taken," did Ms. Silva become, arguably, a government Special Agent.  (*See* Transcript of Hearing at 7:17-21; 21:14-22).

Yet, the question of whether Ms. Silva was a government informant is mooted by the fact that there is no evidence of a search.  Subsequent to the government's request for more photographs, there is no evidence to suggest a government sanctioned private search took place.

---

[6] Defendant presented no evidence at the evidentiary hearing suggesting the government had been in contact with Ms. Silva in advance of her sending the initial packet.  Fourth Amendment concerns simply are not implicated when a private person conducts an unauthorized search and the government's direct or indirect participation is nonexistent or minor. *See Smythe*, 84 F.3d at 1243.

14

Yes, Ms. Silva complied with the government's request and sent additional photographs.  But, as far as the government understood, the pictures were taken without a search.  Ms. Silva explicitly told the government that these pictures were taken in the presence of the Defendant with his consent.  (*See* Transcript of Hearing 22:19-23).  Since Defendant voluntarily interacted with Ms. Silva and allowed her on the premises, there is no indication that his expectation of privacy had been frustrated.  "The Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by [her] to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in a third party will not be betrayed."  *Jacobsen*, 466 U.S. 109 at 117-118.

Further, Ms. Silva may not have taken any photographs on behalf of the government.  At the hearing, she did not remember taking any new photographs after her conversation with Special Agent Mirabal.  (*See* Transcript of Hearing 65:10-23).  Rather, she suggested the photographs she sent him were already on her phone.  *Id.*  This version of events is supported by the timeline.  Ms. Silva sent the second set of photographs via a picture message to Special Agent Mirabal's phone shortly after his request.  (*See* Doc 74-1).  The speed with which she was able to get the additional photographs implies she already had them on her phone prior to speaking to law enforcement.

Assuming, arguendo, there was a private search, the court acknowledges the second prong tilts in favor of the Defendant.  This prong asks "whether the party performing the search intended to assist law enforcement officers or to further his own ends."  In examining this question, a court must also weigh the government's role in the search.  *See United States v. Leffall*, 82 F.3d 343, 347 (10th Cir. 1996).  The Tenth Circuit requires that the "government Special Agent must be involved either directly as a participant – not merely as a witness – or

15

indirectly as an encourager of the private person's search," before a court may find the person acted as an instrument of the government.  *Id.*

Here, Special Agent Mirabal was, certainly, an encourager of Ms. Silva's actions in relation to the second set of photographs.  He explicitly asked her to take more photographs of the marijuana plants on Defendant's premises.  (*See* Transcript of Hearing at 21:14-23; 24:6-15).  Thus, Defendant's argument would be supported had Ms. Silva actually trespassed on his property to take photographs subsequent to getting the government's request.  This is not the case.  Since the Court found no facts showing Ms. Silva engaged in an unconsented search after the government requested more photographs, there is no Fourth Amendment violation.

**THEREFORE,**

**IT IS ORDERED** that Defendant Trevor Thayer's motion to Suppress Evidence (Docs. 60, 83) is **DENIED**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**